## NOVEMBER TERM, 1878. 665

Anderson et al , Partee's heirs, vs. Levy, Adm'r., et al.

---

ANDERSON ET AL. PARTEE'S HEIRS v. LEVY, ADM'R., ET AL.

PRACTICE : *Parties; Heirs; Administrator.*

Upon the death of a party, the title to his lands passes at once to his heirs or
devisees, and the administrator can not represent them in court. In al
cases where title to lands is to be affected they are necessary parties, and the
court should of its own motion refuse to proceed until they are brought in.

APPEAL from *Jefferson* Circuit Court in Chancery.

Hon. J. A. WILLIAMS, Circuit Judge.

*Bell and Compton* for appellant.

*Carlton, contra.*

EAKIN, J. :

This is a suit in equity brought by S. W. McCrary, on the

4th of September, 1873, against H. A. and R. D. Partee, and
J. B. McGehee as partners, under the firm name of Partee,
McGehee & Co., and J. J. Freeman.    The objects of the bill
are, to cancel and set aside certain conveyances of lands to H.
A. Partee, and to vest title in complainant, upon the grounds
that they were held as securities for a debt already paid up :
or, in default of that relief, to have an account of the dealings
between complainant and H. A. Partee and a personal decree.
Freeman holding as trustee from H. A. Partee, to secure an
individual debt of Partee to another person, is made a party.

The case made by the bill is substantially as follows :    On
the 1st of December, 1866, McCrary bought from John Don-
elson and wife, a plantation in Jefferson county, for $15,000 ;
of this amount $8,000 was paid in cash.    For the balance of
$7,000 a note was executed due January 1st, 1868, bearing
ten per cent. interest from January 1st, 1867.    This note was
assigned by Donelson, to Henry W. Reynolds, who, (as devel-
oped in the case) claims an interest in the lands sold.

Complainant, in partnership with others (who have no inter-
est in the matters in controversy) conducted large planting
operations during the year 1867, doing their business through
the house of Partee, McGehee & Co., of Memphis.    As
claimed by said firm, complainant with his partners fell in their
debt.    Having confidence in their statement, complainant exe-
cuted to them his note for this balance in the sum of $16,500.
This was for too large an amount, and it is charged, was
fraudulently obtained.    He calls for an account current. .  To
secure this note, complainant with one of his partners (March)
made a deed of trust to Charles L. Partee, including the Don-
elson place and a large amount of mules and other personal
property, with power to sell and apply the proceeds.    It is
charged that he did take possession of and sell the personal
property but not to the best advantage, nor did he fully apply

the proceeds to the debt. An account of these sales is sought also.

In the fall of 1868, Reynolds was pressing for payment. Defendants agreed to accept drafts to pay him, for which complainant was to ship cotton. To secure Partee, McGehee & Co., for these advances, complainant, on the 5th of September, 1868, made another deed of trust to C. L. Partee of a large amount of personal property, cotton, etc., worth $10,000, conditioned upon repayment of the amount advanced by them, to take up Reynold's note, and future advances, that the said trustee should re-convey to complainant the Donelson lands by quit claim deed.

Complainant continued his business with Partee, McGehee & Co., during the year 1869, drawing supplies, receiving advances and shipping cotton. Believing himself, from the representations of the firm, to be still largely indebted to them, he with his wife, on the 2d of March, 1869, made a quit claim deed of the Donelson place to H. A. Partee, one of the firm. This was expressed to be in consideration of amounts advanced, and to be advanced, by him and his firm in payment of said landed property.

Before this time, on the 9th of January, 1869, a balance being due on the Reynold's note, Partee, McGehee & Co., refused to pay the same, unless Reynold's and wife should convey the Donelson lands to H. A. Partee. This had been done and the balance of the note fully paid up. This deed was referred to in the subsequent quit claim of McCrary and wife, on the 2d of March, 1869.

Complainant took possession of the Donelson place at the time of purchase, and has kept it since. He paid taxes with the exception of one year, in which he failed. The lands were sold for taxes, and purchased by Wm. Reynolds, a son of Henry W. On the 21st of November, 1870, complainant

re-purchased the tax title and afterwards, in March, 1872, he transferred it to H. A. Partee.   This, he says, was done in order to enable Partee to make to him a good and complete deed back,   At the same time with this transfer, complainant executed to Partee two notes for $2,000 each, for the rent of the lands for the years 1873 and 1874.   This he says was done to enable H. A. Partee to raise money on them, and for no other purpose.

On the 16th of January, 1871, complainant, as he alleges, purchased another contiguous body of lands, called the Barkdale place, containing about 200 acres.   For this land he paid to the vendor as a part of the cash payment, $536.66.   For the balance of the cash payment, which in all amounted to $3,020, to bear interest from 24th December, 1870, at eight per cent., he drew upon Partee, Burleson & Co., (successors to Partee, McGehee & Co.).   He also drew upon them for the deferred payment of $3,000 due 24th December, 1871, with like interest from December 24th, 1870.   When the drafts were paid H. A. Partee took the deed in his own name.

On the 21st of June, 1873, H. A. Partee made a deed of trust of all these lands to J. J. Freeman, to secure his own debt of about $8,000.

Referring back to the trust deed of September 5, 1868, complainant, explaining the circumstances, says : That in the spring of that year he had gone to North Carolina, filed his petition there in bankruptcy, and been discharged.   On his return he applied to Partee, McGehee & Co., to re-purchase the Donelson place, and to obtain advances of supplies for future planting operations.   The deed of trust was executed in this view, and Partee, McGehee & Co., gave him a certificate showing that said last named deed of trust was made to secure them in assuming the payments on the Donelson place, and for advances to be made thereafter.   Having taken the benefit of the

bankrupt act against the old indebtedness of himself and his planting associates, to Partee, McGehee & Co., they asked him, in consideration of the renewed favor, to revive the old debt. He agreed to that, and to secure it by three life poli-. cies—two for $5,000, and one for $7,000, which have been since transferred to H. A. Partee. At the time of taking out the last policy, he says that Partee, McGehee & Co., gave him a writing explaining the purposes of the policies, and expressing· that upon the payment of the purchase money for the Donel-. son place the title to the same was to be re-conveyed.

On the 13th of March, 1872, he had a settlement with the. firm of Partee, Burleson & Co., showing a balance against him of $1,833.34. This, by the 16th of March, had been overpaid by the amount of $851.59, which was paid complainant. Com-. plainant says this settled all the payments due from him on the two places ; that he executed a note to H. A. Partee for· about $9,000, which was wholly for a balance of the old debt revived in 1868, secured by the life policies ; and, in no part, for subsequent advances, or for payment on land. He says, further, that the two rent notes which had been given for· Partee's accommodation, he intended, if the payment fell upon him, to claim them as credits upon the $9,000 note.

He charges that the deed of trust to Freeman was a fraud, and that H. A. Partee declines to make title.

He prays that all the said conveyances to H. A. Partee be set aside and annulled ; that the lands be released from the trust deed of Freeman in case the money secured thereby can be made out of H. A. Partee, or has been paid ; that if he cannot obtain title to the lands he may have an account with said H. A., and those he represents ; that the life policies may be delivered up ; that he may have a personal decree against said H. A., and general relief.

H. A. Partee, in his answer, says : That he was an old

friend of complainant; desired in every way to aid him, and induced mercantile firms with which he was connected to give complainant credit and accommodations. He files an abstract of the accounts up to April, 1868, for the settlement of which the note for $16,500 was executed, and says the life policies were taken out to secure it. He explains the indebtedness by saying that complainant and his partners had failed to ship the crop of 1867, as promised, but had sold it in New Orleans. The trustee in the first deed of trust proceeded to realize what he could on the personal property, and apply the proceeds, which, with other credits, reduced the amount due on the note to about $12,875. This debt respondent assumed and took an assignment of the note; and Partee, McGehee & Co., closed their account with McCrary and his firm. Partee, Burleson & Co., agreed to make future advances to McCrary on respond ent's guaranty. It was part of the consideration for this arrangement that McCrary and wife should give him a quit-claim deed of the Donelson lands, and that Reynolds and wife should also execute to him a title. The intention was to have the legal title vest absolutely in himself; but, as an act of friendship, he gave McCrary a writing in which he agreed to re-convey, in case he would pay $7,000 out of his crop after settling with Partee & Burleson for advances; and as for the balance he would give time. This arrangement, made in 1868, was consummated in 1869 by deeds.

The Reynolds note was subsequently paid out of shipments of cotton to Partee, Burleson & Co., by McCrary, over and above their charges for advances, save a balance of about $2,800, which was taken up by respondent.

It was agreed that if McCrary did not repurchase, he would pay rent at the rate of $1,400 per year from January 1, 1868. He was, meanwhile, to pay taxes, and respondent the life premiums.

Anderson et al., Partee's heirs, vs. Levy, Adm'r, et al.

In the fall of 1871, McCrary advised respondent that he would be unable to purchase; and in March, 1872, they had a final settlement. Complainant surrendered the written agreement concerning the purchase, and it was destroyed. Respondent gave up to him the note for $12,875 (balance). A general settlement of all matters was made, and complainant, to show the ultimate balance, gave a new note to respondent for $9,788.99, dated March 17, 1872, due at one day, bearing ten per cent interest. Next day complainant executed his final release to respondent of all interest in the land which he may have acquired by virtue of the purchase of the tax-title from Wm. Reynolds.

As for the Barksdale lands, respondent says that he bought and paid for them with his own means; complainant advanced without his knowledge or request something over $500 on the cash payment, which was afterwards refunded to him.

Since the settlement in March, 1872, respondent says that Burleson & Patterson have continued to make advances to complainant, on respondent's guaranty, and that he has paid out for complainant about $2,009.87.

He says the trust deed to Freeman was made in good faith, to secure the debt therein expressed, and to get an extension of credit, and, generally, denies all charges of fraud.

Freeman, the trustee referred to, denies all fraud and collusion on his part; says he knows nothing of the matter between H. A. Partee and McCrary, and that the trust deed was made in good faith to secure a *bona fide* debt, which remains unpaid; says that the beneficiaries in the deed whom he represents, as well as himself, are innocent purchasers. He has advertised the lands for sale, and prays that any purchasers at the sale may be protected.

R. C. Daniels, pending the suit, was allowed to become a party, and file an answer and cross bill, with a prayer for a

receiver. He says that on the 21st day of January, 1873, H. A. Partee desired him to become security upon a note to the Merchants' National Bank for $8,000 ; that said Partee exhibited to him his titles to the lands in question, which respondent thought satisfactory. He accordingly indorsed for him, and the deed of trust for his security was made to Freeman. Afterwards, when the note became due, he was compelled to pay it. Neither at the time of endorsement, nor of payment, did he have any notice or knowledge of complainant's equities, or of any transactions between him and Partee. He shows, further, that the trustee had sold under the provisions of the deed of trust on the 24th day of December, 1876, (meaning, doubtless, 1873), and that he had bought in the land for $6,750, which was credited on the debt, and deed executed. He claims to be the absolute owner of the land under said purchase, entitled to the immediate possession, but does not bring ejectment because the title is already involved in this suit. He prays that his title may be confirmed against the complainant and all others, parties to the suit ; charges that complainant is sub-letting the lands, and unless prevented will collect the rents, which are worth $2,000 a year, and that he has no property out of which it can be made, not exempt. He prays a receiver. This answer and cross bill was filed on the 25th day of February, 1874. The heirs of McCrary were not made parties. It appears from the next order of court, no date of which appears in the transcript, that on motion of "the defendants' attorney, and upon suggestion of the death of the plaintiff, S. W. McCrary," it was ordered that the cause be revived in the name of J. F. Vaughan, as his administrator. The heirs do not appear ever to have been made parties or brought in.

The cause was heard on the 30th of August, 1875, upon the pleadings, exhibits, and a great mass of depositions on both

sides. The court found that, at the institution of the suit the complainant, McCrary, was the equitable owner of the property, and had fully paid for all the lands ; that the life policies were given for the balance of his indebtedness to Partee, Mc-Gehee & Co., and to H. A. Partee, to be kept alive by them by payment of the premiums ; that the allegations of fraud on the part of H. A. Partee were fully sustained by the evidence ; that the trust to Freeman was a fraud upon the trustee, but as complainant had contributed to making it possible by taking a lease as a tenant, the equities of the beneficiaries in said trust deed were superior to those of complainant, in the event that said Freeman cannot, by reason of the insolvency of Partee, save them harmless without resort to the lands. It was further held that the purchase was made by Daniels, *pendente lite*, in Tennessee, for cash and without any notice in Arkansas, and in violation of our laws, and was consequently null and void. The deeds and conveyances to Partee were held for naught. The title to the lands was divested out of him and vested in the lawful heirs of S. W. McCrary. It was further ordered that Freeman, as trustee, have leave to amend his answers and cross-bill in accordance with the rulings of the court made in this cause, and proceed to foreclose, if the proper allegations be made.

Fees were settled and allowed to complainants' attorneys, and ordered to be paid by the administrator out of the first moneys coming into his hands belonging to said estate, and to be charged in his settlements. No order was made for accounting between the parties with regard to the old transactions. From this decree Freeman, Partee and Daniels appealed.

This detail of the pleadings and matters of record, has been necessary to show the points at issue in the case, and the interest claimed by the several parties, so as to render the sug-

42

gestions which the court may make, intelligible to the profession. To that end it is further necessary to observe upon the weight of the evidence.

We think upon the transcript, as now presented, it is clear that the Donelson lands were held by Partee as a security for a debt until the settlement between him and complainant in March, 1872—certainly as a security for the sums advanced to pay for it. Whether he could have held them as a security for the note given for the general balance then ascertained, is a matter which it was not necessary for the court below to decide. As for the Barksdale lands, it seems plain that they were bought wholly by Partee with his own means, but with the intention of allowing complainant to pay for them, and keep them in connection with the others, if he could. It was not clear, under these circumstances, that complainant had any equity in them, which he might enforce against the will of H. A. Partee, the purchaser. It is not a case of one employed by another to purchase, and taking the title in his own name. He was not the agent of McCrary, but, on the contrary, McCrary was his, and the deed was made as intended. Any equity McCrary might have would spring out of the necessity of the Barksdale place to the full use and enjoyment of the other, to the best advantage, and the acknowledged right to redeem the latter, connected with an agreement on Partee's part to allow McCrary to redeem both together, and proof that the land was purchased as a necessary addition to the Donelson place. In this view it may not have been erroneous in the court to hold that the Barksdale place was held as a security for the money advanced on that. This certainly was the mutual understanding of the parties up to the date of the March settlement.

This case should have turned on the settlement in March, 1872, which seems to have changed the condition of the property and the relation of the parties. H. A. Partee then held

the old note for $16,500, in his own right. It had been reduced to something over $12,000 in 1868, the balance with interest being unpaid. He claimed to have advanced about $3,000 on the Reynold's note, conceding that the other payments had been made by McCrary. This (about $2,800 with interest) was due to Partee. He had paid for the Barksdale place over $6,000, which (on the supposition of McCrary's right to redeem) was also due with interest. Besides, there seems to have been other debts which a careful accountant made up into the statement. Nothing was due to either of the mercantile firms of which H. A. Partee was a member. The credits of these firms had been extended through Partee, who assumed the debts and made it an individual matter.

The evidence seems to establish clearly that owing this vast amount he dispaired of being able to redeem at any time. He gave up his written evidence of right, and conveyed to Partee an outstanding tax title, took credit for the value of the lands on the account as it would have stood with all payments made for it charged against him, and gave his note for the balance. The full legal title was unconditionally in Partee, and had been before, save only as to the outstanding tax title. This was conveyed and McCrary took a lease as Partee's tenant. It is difficult to perceive the grounds upon which, in the face of these facts, the court held that the lands had been fully paid for and belonged to McCrary. The preponderence of testimony is largely against it, and in favor of the conclusion, that McCrary, on that settlement, abandoned all his rights to the land and received therefor a credit of about $20,000—giving for the balance his note for something over $9,000, secured by life policies. If the court below had taken this view of it, it would have followed that the trust deed to Freeman, and all proceedings under it, were matters concerning which complainant had no right to inquire.

The decree, and all proceedings in the court below, with regard to the land, after the suggestion of McCrary's death, were erroneous. The administrator might have prosecuted the writ for an account against Partee and a personal decree. But that branch of the case was abandoned. Upon the death of a party the title to his lands passes at once to his heirs or devisees, and the administrator cannot represent them in court. In all cases when title is to be affected they are necessary parties. It is well settled that the heirs of a mortgagor are necessary parties defendants to a bill to foreclose, or as complainants in a bill to redeem. A bill to assert an equitable title to land, to which the legal title is in another, on the grounds that it was in fact a mortgage, is in fact a bill to redeem. The success or failure of it effects the heirs, and they *must* in all cases be brought in. It does not cure the omission to decree in favor of the absent heirs. The propriety of the jurisdiction cannot depend upon the result. Absent parties are not bound by decrees, and should take no advantage from them. The action of the court in such cases is erroneous *ab initio*. It should, of its own motion, refuse to proceed until the heirs are brought in, and can have an opportunity to be heard.

There may arise cases where an administrator, also, may properly be made a party in a suit concerning the title to the lands. He has a qualified statutory right to the possession, and for the purpose of paying the debts, may apply to the probate court for their sale. To protect or enforce this right of possession and right to use lands as assets for debts, he might, perhaps, on a proper showing of the necessity, be made a party with these heirs, but not without them. The substantial right and title is cast by descent upon the heirs, and the right of the administrator is in the nature of a contingent burden.

Since this cause has been appealed, the death of H. A. Partee has been suggested here, and his administrator, widow and

heirs all been made parties. This is good practice and should have been pursued in the court below with regard to McCrary's representatives, widow and heirs, in a contest for title to land, and for a personal decree. The death of McCrary may give rise to a further account concerning the proceeds of the life policies, and amounts advanced to Burleson, Patterson & Co., upon a supplemental bill to be filed in this cause, for which purpose the administrators of both parties will be necessary parties.

It will be seen that in the present status of this cause, it is premature to make any authoritative ruling either upon the law or the facts. Nevertheless as great labor has been expended upon it by the attorneys, and considerable expense incurred in the appeal, it has been thought advisable by the court to intimate its views upon the whole transcript as it now appears. What changes of aspect the case may assume in its further progress cannot be anticipated, and it will be understood, that when properly brought to hearing with proper parties, in the court below, the whole cause is to be heard *de novo*.

For the error in hearing the cause without reviving in favor of the heirs of complainant McCrary, the decree is reversed and the cause remanded for further proceedings. The administrator, widow and heirs of H. A. Partee having appeared here will follow the case below.